Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
Dan@ShayLegal.com
Harrison J. Lynch (SBN 355139)
Harrison@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVAN PARR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER SOUR CO., a Delaware corporation,<br><br>Defendant. | Case No.: '26CV5599 RBM JAC<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*<br>2. Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*<br>3. Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*<br>4. Breach of Express Warranty, Cal. Com. Code § 2313<br>5. Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Evan Parr ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Better Sour Co. ("Better Sour" or "Defendant"). Plaintiff makes the following allegations on information and belief and the investigation of his counsel, except as to allegations about himself, which are based on personal knowledge.

## NATURE OF THE ACTION

2. Plaintiff brings this class action on behalf of himself and all similarly situated consumers in the United States, and a subclass of consumers in California, who purchased Better Sour Tropical Sour Gummy Mix (the "Tropical Mix" or the "Product") or any of Defendant's other Better Sour-brand gummy candies that contain allulose and state an amount of sugar per serving that excludes allulose (collectively, the "Products").[1]

3. Defendant prints "3g SUGAR" on the front of the Tropical Mix and declares "Total Sugars 3g" and "Includes 2g Added Sugars" in its Nutrition Facts panel (collectively, the "Representations"). Those figures leave out allulose—the Product's second-listed ingredient—which is a monosaccharide and therefore a sugar under federal and California labeling standards. 21 C.F.R. § 101.9(c)(6)(ii). Counted as the law requires, the Product contains several times the sugar Defendant declares. The Representations are false.

4. Accordingly, Plaintiff brings the following claims against Defendant: (1) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"); (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"); (3) violation of California's

[1] The Products include, without limitation, all sizes and pack configurations of Better Sour Tropical Sour Gummy Mix and every other gummy candy sold under the Better Sour brand that lists allulose as an ingredient and bears a statement of the grams of sugar per serving that excludes allulose. Plaintiff will identify the full list of Products through discovery of Defendant's records.

False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*. (the "FAL"); (4) breach of express warranty; and (5) unjust enrichment.

**PARTIES**

5. Plaintiff Evan Parr is a citizen of California residing in Bonsall, California. On or about July 29, 2026, Plaintiff purchased Defendant's Better Sour Tropical Sour Gummy Mix at Costco Wholesale Warehouse No. 452 in San Diego, California, for his personal use. Before making his purchase, Plaintiff saw and relied on the representation on the front of the package that the Product contained "3g SUGAR."

6. Plaintiff relied on that representation, reasonably understood it to mean that each serving contained three (3) grams of sugar, and paid a price premium because of it. The Product contains several times that amount. Had Plaintiff known the truth, he would not have purchased the Product or would have paid substantially less for it.

7. Plaintiff would like to purchase low-sugar candies, including Defendant's, but he cannot know whether the Products' sugar figures have been or will be corrected. Unless Defendant is required to label the Products accurately, Plaintiff is likely to be misled again. Plaintiff is an average consumer without specialized knowledge of food chemistry and cannot independently determine whether allulose is a sugar or how much of it the Products contain.

8. Defendant Better Sour Co. is a Delaware corporation headquartered in Austin, Texas. Defendant markets and sells the Products throughout the United States, including in California and in this District.

9. Defendant formulates the Products, or causes them to be formulated to its specifications, and authors, approves, and controls their labels. The Product's label reads "DISTRIBUTED BY: BETTER SOUR CO. AUSTIN, TX 78752."

## JURISDICTION AND VENUE

10. This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). The aggregate claims of the proposed Class exceed $5,000,000 exclusive of interest and costs. The Class has more than 100 members. Plaintiff, a citizen of California, is a citizen of a state different from Defendant. No exception under 28 U.S.C. § 1332(d)(3) or (d)(4) applies.

11. This Court has specific personal jurisdiction over Defendant. Defendant directs the Products into California and sells them in this District bearing the Representations at issue, and Plaintiff's claims arise out of those sales.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. Plaintiff bought the Product and was deceived here.

13. The CLRA, UCL, and FAL claims are brought on behalf of the California Subclass. The express warranty and unjust enrichment claims are brought under California law on behalf of the Nationwide Class and the California Subclass.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Low-Sugar Products

14. Consumers seek out and pay more for foods with less sugar. A 2022 survey found that 73% of Americans were trying to limit or avoid sugars.[2] Sellers know it and reserve the front of the package for the claims most likely to motivate a purchase. Defendant prints a gram-specific sugar figure—"3g SUGAR"—on the front of the Tropical Mix. That figure is possible only because Defendant leaves out the Product's second-listed ingredient: allulose, a sugar.

15. The premium is real. The Tropical Mix sells for approximately $11.99 per 12-ounce bag—about $1.00 per ounce—substantially more per ounce than

---

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2025/04/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

comparable conventional gummy candies sold at Costco and elsewhere. Plaintiff paid that premium.

**B. Defendant's Representations and Warranties**

16. The front panel of the Tropical Mix states "3g SUGAR." The same statement appears on each individually wrapped pack inside the bag. Nothing on the package says that the figure excludes allulose.

17. Below is an image of the Product's front panel:




18. The other Products are likewise sweetened in part with allulose and bear a statement of grams of sugar per serving, and a Nutrition Facts sugars declaration, that exclude allulose. Defendant's website lists allulose as an ingredient of its Better Sour Gummy Stars, which Defendant markets as containing "3g" of sugar per bag.[3]

[3] https://bettersour.com/products/guava-calamansi-lime (last visited Sept. 25, 2026).

19. The Representations are uniform; every purchaser of every Product was exposed to them. They communicate to reasonable consumers that each serving contains the stated amount of sugar—the plain meaning of "3g SUGAR"—and federal and California law prescribe an objective definition of what counts as sugar.

**C. The Products Are Substantially Similar**

20. Plaintiff purchased the Tropical Mix. The other Products are substantially similar to the Tropical Mix in every respect material to the claims alleged:

a. **Defendant.** Every Product is labeled, marketed, and distributed by Defendant;

b. **Brand.** Every Product is sold under the Better Sour brand;

c. **Sweetening system.** Every Product is sweetened in part with allulose, a sugar;

d. **Representation.** Every Product bears, on its front panel, a statement of the grams of sugar per serving that excludes allulose, and a Nutrition Facts panel whose "Total Sugars" and "Added Sugars" declarations exclude allulose;

e. **Absence of disclosure.** No Product discloses that allulose is a sugar or that its sugar figures exclude it; and

f. **Misleading effect.** The effect on consumers is identical. A purchaser is told the Product contains a stated amount of sugar and receives a Product containing several times that amount.

21. The differences among the Products—product type, flavor, and package size—are immaterial to whether the Representations are false, whether they are unlawful under federal and California law, or whether a reasonable consumer would be misled by them.

**D. Allulose Is a Sugar**

22. Allulose (also called D-psicose) is a monosaccharide—a simple sugar. It is the C-3 epimer of D-fructose. It shares fructose's molecular formula ($C_6H_{12}O_6$) and

differs only in the orientation of a single hydroxyl group.[4] The Food and Drug Administration ("FDA") describes it the same way: "Allulose or D-psicose (D-ribo-2-hexulose) is a monosaccharide with a molecular formula of C6H12O6, and is an epimer of D-fructose."[5] As a monosaccharide, allulose falls within the FDA's codified definition of sugars—"the sum of all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii).

23. The FDA's definition of sugars has included allulose since the agency adopted it. The agency adopted the definition in 1993. 58 Fed. Reg. 2,079, 2,097–99 (Jan. 6, 1993). It has "traditionally determined what is captured under the 'Total Sugars' declaration on the label by chemical structure."[6] In its 2016 Nutrition Facts rulemaking, the FDA said the same thing. Substances "are included or excluded from the definition of sugars and added sugars based on whether they are a free mono or disaccharide rather than on their physiological effects."[7] In the same rulemaking, the FDA confirmed the point as to allulose specifically. Tate & Lyle, an allulose manufacturer, had petitioned the agency to exempt allulose from the sugars declaration because it is not metabolized like other sugars. The agency did not exempt it. It said that "Allulose, as a monosaccharide, must be included in the declaration of each [of carbohydrate, sugars, and added sugars] pending any future rulemaking that would otherwise exclude this substance from the declaration."[8] No such rulemaking has occurred. The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and contains no allulose exclusion. 21 C.F.R. § 101.9(c)(6)(ii).

---

[4] Han-Joo Maeng et al., Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods art. 448 (2019), https://doi.org/10.3390/foods8100448.

[5] FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 2 (Oct. 2020), https://www.fda.gov/media/123342/download.

[6] FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 6 (Oct. 2020), https://www.fda.gov/media/123342/download.

[7] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,837 (May 27, 2016).

[8] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

24. The Seventh Circuit recently confirmed the point. In *Franco v. Chobani, LLC*—a class action challenging "zero sugar" yogurt sweetened with allulose—the court invited the FDA to address the meaning of 21 C.F.R. § 101.9(c)(6)(ii). The agency "took the position that the text of § 101.9(c)(6)(ii) is unambiguous, and that total sugars as defined in that regulation include all monosaccharides, including allulose." *Franco v. Chobani, LLC*, No. 25-2087, slip op. at 6 (7th Cir. July 27, 2026).[9] The Seventh Circuit agreed: "Because the definition includes every monosaccharide and the following parenthetical is merely a list of examples, allulose is a sugar under § 101.9(c)(6)(ii)." *Id.* at 7. The court further held that the FDA's 2020 allulose guidance "isn't an interpretation of § 101.9(c)(6)(ii)—it's an announcement of a change in enforcement policy" and so was not entitled to deference. *Id.* at 9. And because the consumers there sought "to hold Chobani liable under state law for violating identical standards," their claims were not preempted. *Id.* at 10–11.

**E. Each Product Contains Several Times the Sugar It Declares**

25. Allulose appears in the ingredient statement of every Product. The Tropical Mix's ingredient statement reads: "INGREDIENTS: TAPIOCA SYRUP, ALLULOSE, VEGAN CANE SUGAR, APPLE JUICE CONCENTRATE, POTATO STARCH, MALIC ACID, PECTIN, CITRIC ACID, NATURAL FLAVORS WITH OTHER NATURAL FLAVORS, SODIUM CITRATE, CITRUS FIBER, VEGETABLE JUICE (COLOR), SPIRULINA EXTRACT (COLOR), TURMERIC (COLOR)."

26. Ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). By Defendant's ordering, the Tropical Mix contains more allulose than every ingredient except tapioca syrup, including cane sugar.

---

[9] Brief for the United States as Amicus Curiae at 11–12, *Franco v. Chobani, LLC*, No. 25-2087, 2026 WL 1894806 (7th Cir. June 29, 2026).

27. The Nutrition Facts panel confirms the quantity. Per 28-gram serving, it declares 19 grams of Total Carbohydrate, 6 grams of Dietary Fiber, 3 grams of Total Sugars, and 40 Calories. That leaves approximately 10 grams of carbohydrate per serving that is neither fiber nor declared sugar. Ordinary digestible carbohydrate supplies about 4 calories per gram, so the declared 40 calories are possible only if most of that remainder is allulose, which supplies a fraction of a calorie per gram. Counted as 21 C.F.R. § 101.9(c)(6)(ii) requires, each serving contains several times the 3 grams of sugar Defendant declares.

28. Below is an image of the Nutrition Facts panel and ingredient statement:




29. Allulose is added during processing, so it is also an added sugar. 21 C.F.R. § 101.9(c)(6)(iii). Nothing on the label discloses that allulose is a sugar or that Defendant left it out of the Product's sugar figures.

**F. The Representations Violate the FDA Labeling Regulations**

30. "3g SUGAR" on the front of the package is an "expressed nutrient content claim"—"any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). A

statement of the amount of a nutrient may be made outside the Nutrition Facts panel only if, among other things, "it is not false or misleading in any respect." *Id.* § 101.13(i)(3). "3g SUGAR" is false because it excludes allulose, a sugar "as defined in § 101.9(c)(6)(ii)."

31. The Nutrition Facts panel is independently false. Section 101.9(c)(6)(ii) requires "[a] statement of the number of grams of sugars in a serving" and defines total sugars as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Section 101.9(c)(6)(iii) requires a separate declaration of added sugars, which include sugars "added during the processing of foods." Allulose is a monosaccharide added during processing. The Product's "Total Sugars 3g" and "Includes 2g Added Sugars" declarations leave it out.

32. The FDA's 2020 allulose guidance does not change that. It announces only that the agency intends to exercise enforcement discretion for the exclusion of allulose from the Total Sugars and Added Sugars declarations "pending review of the issues in a rulemaking" that has never occurred. It does not amend § 101.9(c)(6)(ii). *Franco*, slip op. at 5–6, 9–10. And the FDA told the Seventh Circuit that it "made no such statement" of enforcement discretion "with respect to nutrient content claims"—which is what "3g SUGAR" is. Brief for the United States as Amicus Curiae at 7, *Franco*, No. 25-2087, 2026 WL 1894806 (7th Cir. June 29, 2026).

33. Because their labels bear a false nutrient content claim and false sugar declarations, the Products are misbranded under the Federal Food, Drug, and Cosmetic Act (the "FDCA"). 21 U.S.C. § 343(a)(1) (labeling "false or misleading in any particular"); *id.* § 343(q)(1)(D) (nutrition information must state the amount of sugars); *id.* § 343(r)(1)(A) (nutrient content claim not made in accordance with the governing regulations). Misbranded food may not lawfully be introduced into interstate commerce. *Id.* § 331(a).

34. Plaintiff does not seek to enforce the FDCA. He seeks relief under California consumer-protection and warranty law, including Sherman Law provisions that adopt food-labeling requirements identical to the federal ones. Because Plaintiff's claims rest on the same definition of sugars that governs the Products' labels under federal law, they impose no requirement "not identical to" federal law and are not preempted. 21 U.S.C. § 343-1(a)(4)–(5).

35. State-law claims that enforce labeling requirements identical to those of the FDCA and its regulations are not preempted. Informal statements of FDA enforcement policy that were never adopted through rulemaking carry no preemptive force, and the FDA's 2020 allulose guidance is such a statement. By its terms it creates no rights and binds neither the agency nor the public. As the Seventh Circuit put it, "the fact that one sovereign (the United States) indicated that it would not enforce its labeling requirements with respect to allulose should not have led [the manufacturer] to believe that the states would take a similar approach." *Franco*, slip op. at 10. An agency's decision not to enforce its regulation is not a federal "requirement" under 21 U.S.C. § 343-1(a), and it does not authorize a sugar declaration or nutrient content claim that the regulation forbids.

36. Nor does any product-specific federal approval shield the Products. The labels of conventional foods are not reviewed or approved by the FDA before sale. No federal agency evaluated the Products' labels, and no federal agency determined that they may say "3g SUGAR" or "Total Sugars 3g." Plaintiff seeks to hold Defendant to the federal standard, not to add to it.

**G. Defendant's Conduct Violates California's Food Labeling Laws**

37. California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq.* (the "Sherman Law"), adopts the federal food-labeling regulations as California law: "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1,

1993, or adopted on or after that date shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a); *see also id.* § 110670. Every requirement of sections 101.9 and 101.13 above is therefore California law.

38. Defendant's labeling, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, Cal. Health & Safety Code §§ 110660, 110665, 110670, 110760, 110765, and 110770, and its false-advertising provisions, *id.* §§ 110390, 110395, 110398, and 110400. Those violations are independently unlawful and serve as predicate violations under the Unfair Competition Law.

**H. Reasonable Consumers Cannot Detect Defendant's Deception**

39. Reasonable consumers have no reason to second-guess a precise sugar figure printed on the front of the package and repeated in the Nutrition Facts panel, and are not expected to. Allulose is not a household name. In a 2021 survey, only 15% of respondents had heard of it.[10] Nothing available at the point of sale reveals that the Products contain more sugar than they declare.

40. The Seventh Circuit rejected the argument that consumers do not care about allulose. "Whether reasonable consumers care about the existence of allulose in their yogurt isn't the same thing as asking whether reasonable consumers would be deceived by it." *Franco*, slip op. at 12. The court held the allegation of deception plausible and left how reasonable consumers read the label as a question of fact. *Id.* at 12–13. A statement that a food contains "3g" of sugar is no less a promise than "sugar free." It tells consumers exactly how much sugar they are getting.

41. How much sugar a food contains is material. It is information a reasonable person would consider in deciding whether, and at what price, to buy. Allulose also causes gastrointestinal effects. In a clinical trial comparing allulose to the same

[10] International Food Information Council, IFIC Spotlight Survey: Perceptions & Use of Dietary Sweeteners 2 (May 5, 2021), https://ific.org/wp-content/uploads/2025/04/IFIC-Sweeteners-Survey.May-2021.pdf.

dose of sugar, subjects consuming allulose reported significantly higher rates of diarrhea, abdominal distention, and abdominal pain.[11]

**I. Defendant Knew the Representations Were False**

42. Defendant knew or should have known that the Representations were false and unlawful. It formulates the Products and controls their labels. It knew the Products contain allulose and that allulose is a sugar—as the FDA has repeatedly confirmed—and it left allulose out of the sugar figures on the Products' labels. It continues to sell the Products bearing the Representations. Its conduct is knowing, willful, and continuing.

**J. Defendant's Understated Sugar Claims Injured Plaintiff and the Class**

43. As a direct and proximate result of the Representations, Plaintiff and the Class Members paid for, and paid a premium for, Products that were not as represented. They were deprived of the benefit of their bargain, received Products worth less than represented, and purchased misbranded Products that could not lawfully be sold. They suffered injury in fact and lost money or property.

44. The price premium attributable to the Representations can be measured on a classwide basis through accepted methods, including conjoint analysis and hedonic regression, that isolate the market value of a low, gram-specific sugar claim such as "3g SUGAR" from the Products' other attributes. That premium is the measure of damages under Plaintiff's legal claims and of restitution under his equitable claims, and it flows directly from the theory of liability alleged.

**K. Plaintiff Lacks an Adequate Remedy at Law**

45. Plaintiff lacks an adequate remedy at law. Damages cannot remedy his inability to rely on Defendant's labels in the future. Only injunctive relief can. Restitution and disgorgement are equitable remedies, not coextensive with damages, and legal remedies may not provide complete relief. The UCL's limitations period is

---

[11] Comments of the Center for Science in the Public Interest, Docket No. FDA-2019-D-0725, at 3 (June 17, 2019), https://www.cspi.org/sites/default/files/2022-03/allulose%20final%20from%20CSPI.pdf.

four (4) years, and the periods governing the CLRA and FAL are three (3) years, so the UCL reaches purchases those statutes do not.

## CLASS ALLEGATIONS

46. Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4). As used herein, the "Class Period" means the period from four (4) years preceding the filing of this Complaint through the date of class notice. Plaintiff seeks to represent the following classes (collectively, the "Class," whose members are the "Class Members"):

> **Nationwide Class:** All persons who, during the Class Period, purchased one or more of the Products in the United States for their personal use and not for resale.
>
> **California Subclass:** All persons who, during the Class Period, purchased one or more of the Products in California for their personal use and not for resale.

47. Excluded from the Class are Defendant and its parents, subsidiaries, affiliates, officers, directors, employees, and agents; the judicial officers assigned to this action and their staff and immediate families; counsel for the parties; persons who purchased the Products for resale; and persons who timely opt out. Also excluded are claims for personal injury, wrongful death, or emotional distress.

48. Plaintiff reserves the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

49. **Ascertainability:** Class membership turns on objective criteria—purchase of a Product, in the United States or in California, during the Class Period—and can be determined from sales records and by affidavit.

50. **Numerosity:** The Class numbers in the thousands. Defendant sells the Products in thousands of retail stores nationwide, including in California. Class Members can be notified by published and digital notice.

51. **Commonality and Predominance:** Common questions of law and fact predominate over any individual questions. They include the following:

(a) Whether allulose is a sugar;

(b) Whether the Representations are false;

(c) Whether the Representations violate 21 C.F.R. §§ 101.9(c)(6)(ii)–(iii) and 101.13(i)(3);

(d) Whether the Representations are likely to deceive a reasonable consumer;

(e) Whether the Representations were material;

(f) Whether the Products are misbranded under federal and California law;

(g) Whether the Representations caused Plaintiff and Class Members to pay a price premium measurable on a classwide basis.

52. **Typicality:** Plaintiff, like every Class Member, was exposed to the Representations, purchased a Product in reliance on them, and suffered the same economic injury from the same course of conduct. Each Product bears a materially identical sugar Representation that excludes allulose, is sweetened with allulose, and is subject to the same labeling standards. The differences among them are immaterial to the claims alleged.

53. Plaintiff has Article III standing. He purchased a Product in reliance on the Representations, paid a price premium, and lost money as a result. He is a member of both the Nationwide Class and the California Subclass. Whether he may represent purchasers in other states is a question of typicality and adequacy under Rule 23, not of standing.

54. **Adequacy:** Plaintiff has no interests adverse to the Class, is committed to its vigorous prosecution, understands the duties of a class representative, and has retained counsel experienced in consumer class actions. Fed. R. Civ. P. 23(a)(4).

55. **Superiority:** A class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). The Products are low-cost consumer goods, and the price premium attributable to the Representations is a fraction of their price. No Class

Member has an interest in individually controlling a separate action. Concentrating the claims in this forum is desirable because Plaintiff purchased the Product here and the California Subclass's claims arise under California law. This action presents no unusual management difficulties.

56. Defendant has acted on grounds generally applicable to the Class by uniformly labeling, marketing, and selling the Products with the Representations, so final injunctive and declaratory relief is appropriate for the Class as a whole.

57. In the alternative, Plaintiff seeks certification under Rule 23(c)(4) of the common issues of whether allulose is a sugar, whether the Representations are false and unlawful, and whether they are likely to deceive a reasonable consumer.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

## CAL. CIV. CODE § 1750 *ET SEQ.*

58. The Products are "goods," Defendant is a "person," Plaintiff and the Class Members are "consumers," and Defendant's sales of the Products to them are "transactions" within the meaning of Cal. Civ. Code § 1761(a), (c), (d), and (e).

59. Defendant's conduct violates Cal. Civ. Code § 1770(a)(5) (representing that goods have characteristics, ingredients, or quantities that they do not have), (a)(7) (representing that goods are of a particular standard, quality, or grade when they are of another), (a)(9) (advertising goods with intent not to sell them as advertised), and (a)(16) (representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not).

60. Defendant violated each provision by representing that the Products contain "3g SUGAR" per serving and by declaring "Total Sugars 3g" and "Includes 2g Added Sugars," when the Products contain several times that amount of sugar. Defendant also violated each provision by selling Products that are misbranded

under 21 U.S.C. § 343 and Cal. Health & Safety Code §§ 110660, 110665, and 110760.

61. The Representations were material—a reasonable consumer attaches importance to how much sugar a food contains—and Defendant placed them on the front of the package because they drive purchases. Plaintiff and the Class Members relied on them, reasonably understood them to mean the Products contained three (3) grams of sugar per serving, and would not have purchased the Products, or would have paid substantially less, had they known the truth. They suffered damage under Cal. Civ. Code § 1780(a).

62. Defendant knew or should have known that the Representations were false. It formulates the Products, controls their labels, and lists allulose as the second ingredient while representing that the Products contain three (3) grams of sugar. Defendant acted willfully and with reckless disregard for the truth.

63. Concurrently with the filing of this Complaint, counsel for Plaintiff is mailing a notice letter under Cal. Civ. Code § 1782(a) by certified mail, return receipt requested, to Defendant. The letter identifies the particular CLRA violations alleged, is sent on behalf of Plaintiff and all similarly situated consumers, and demands that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices alleged herein. If Defendant fails to do so within 30 days, Plaintiff will amend this Complaint to seek actual, statutory, and punitive damages under Cal. Civ. Code § 1780(a).

64. Plaintiff and the Class Members currently seek injunctive relief under the CLRA and an award of attorney fees and costs under Cal. Civ. Code § 1780(e) and reserve the right to amend the Complaint to seek any additional relief authorized after expiration of the statutory notice period. Cal. Civ. Code §§ 1780, 1782(d).

## COUNT II

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

## CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*

65. Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

66. Plaintiff has standing under Cal. Bus. & Prof. Code § 17204. He purchased the Product in reliance on the "3g SUGAR" representation, paid a price premium, and lost money as a result.

67. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Conduct is unfair if it is tethered to a legislatively declared policy, if the gravity of the harm outweighs the utility of the conduct, or if the injury is substantial, not outweighed by countervailing benefits, and not reasonably avoidable. Defendant's conduct is unfair under each test.

68. Defendant's conduct is unlawful. It violates the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*; the CLRA, Cal. Civ. Code § 1750 *et seq.*; the Sherman Law, including Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110665, 110670, 110760, 110765, and 110770; and the federal food-labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1), (q)(1)(D), and (r)(1)(A) and 21 C.F.R. §§ 101.9(c)(6)(ii)–(iii) and 101.13(i)(3).

69. Defendant's conduct is also unfair. Understating a food's sugar content by leaving out one of its sugars has no utility. It injures consumers, offends the policy embodied in 21 C.F.R. §§ 101.9 and 101.13 and the Sherman Law, and disadvantages competitors whose sugar declarations are accurate.

70. Defendant's conduct is also fraudulent. The Representations are likely to deceive, and did deceive, reasonable consumers, including Plaintiff.

71. Plaintiff and the Class Members suffered substantial injury. They bought Products they would not have purchased, or would have paid less for, had Defendant declared the Products' sugar content accurately.

72. Plaintiff and the Class Members could not reasonably have avoided their injury. They lack the specialized knowledge to determine whether allulose is a sugar, and Defendant's labels affirmatively assured them the Products contained three (3) grams of sugar per serving.

73. Plaintiff lacks an adequate remedy at law for the equitable relief sought under this Count, for the reasons alleged in the paragraphs titled "Plaintiff Lacks an Adequate Remedy at Law" above, and pleads this claim in the alternative pursuant to Federal Rule of Civil Procedure 8(a)(3).

74. Under Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class Members seek restitution, injunctive relief, and all other relief that the Court deems proper, together with attorney fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT III**

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**

**CAL. BUS. & PROF. CODE § 17500 *ET SEQ.***

75. Defendant represents that the Products contain "3g SUGAR," "Total Sugars 3g," and "Includes 2g Added Sugars" per serving when they contain several times that amount of sugar. Those statements on the Products' labels are "advertising" within Cal. Bus. & Prof. Code § 17500. They are untrue and misleading and were likely to deceive consumers.

76. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading.

77. Plaintiff and the Class Members suffered injury in fact and lost money or property as a result of Defendant's false advertising within the meaning of Cal. Bus. & Prof. Code § 17535. They paid a price premium for Products that were not as

advertised and would not have purchased the Products, or would have paid substantially less, had the truth been disclosed.

78. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 *et seq.*

79. Plaintiff lacks an adequate remedy at law for the equitable relief sought under this Count, for the reasons alleged in the paragraphs titled "Plaintiff Lacks an Adequate Remedy at Law" above, and pleads this claim in the alternative pursuant to Federal Rule of Civil Procedure 8(a)(3).

80. Plaintiff and the Class Members seek restitution, injunctive relief, and all other relief that the Court deems proper, together with attorney fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT IV**

**BREACH OF EXPRESS WARRANTY**

81. Defendant is a merchant and seller of the Products within the meaning of Cal. Com. Code §§ 2103(1)(d) and 2104. Under Cal. Com. Code § 2313, any affirmation of fact or promise made by a seller which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. Any description of the goods that is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

82. Defendant's express warranties include its affirmations on the Products' packaging that the Products contain "3g SUGAR," "Total Sugars 3g," and "Includes 2g Added Sugars" per serving. Those affirmations became part of the basis of the bargain with each purchaser.

83. Privity is not required. Defendant made its express warranties directly to consumers through the Products' labels and packaging. Defendant intended those

written representations to reach and be relied upon by retail purchasers, and Plaintiff and the Class Members purchased the Products in reliance on them.

84. Defendant breached those warranties by selling Products containing several times the declared amount of sugar.

85. Plaintiff is providing Defendant with notice of its breach. Concurrently with the filing of this Complaint, counsel for Plaintiff is mailing notice by certified mail, return receipt requested, advising Defendant of the breach of express warranty alleged herein on behalf of Plaintiff and all similarly situated purchasers. Notice is also excused because Defendant had actual knowledge that the Products did not conform to the Representations.

86. Plaintiff and the Class Members suffered financial injury and are entitled to damages under Cal. Com. Code § 2714, measured by the difference at the time and place of acceptance between the value of the Products as accepted and the value they would have had if they had conformed to the Representations, together with incidental and consequential damages under Cal. Com. Code § 2715.

**COUNT V**

**UNJUST ENRICHMENT**

87. To the extent required, Plaintiff asserts this cause of action in the alternative to his legal claims, as permitted by Federal Rule of Civil Procedure 8, and pleads it as a claim for restitution based on quasi-contract.

88. Plaintiff and the Class Members conferred a benefit on Defendant in the form of revenues from their purchases of the Products, which Defendant knowingly accepted and retained.

89. Defendant's retention of those revenues is unjust because it obtained them by misrepresenting the Products' sugar content, causing purchases that otherwise would not have occurred or would have occurred only at lower prices. Plaintiff and the Class Members are entitled to restitution of the revenues derived from those sales.

90. Plaintiff and the Class Members lack an adequate remedy at law. Restitution measured by Defendant's revenues reaches amounts that damages measured by the price premium would not. No legal remedy can supply the injunctive relief Plaintiff seeks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Nationwide Class and the California Subclass, and Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court or jury, consistent with applicable law and only under causes of action that permit such relief, including such damages as Plaintiff may seek by amendment under Cal. Civ. Code § 1780(a) upon expiration of the notice period provided by Cal. Civ. Code § 1782;

e) For pre- and post-judgment interest on all amounts awarded, including under Cal. Civ. Code §§ 3287 and 3288;

f) For an order of restitution, disgorgement, and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

h) For an order awarding Plaintiff's and the Class's reasonable attorney fees, expenses, and costs of suit, pursuant to Cal. Code Civ. Proc. § 1021.5 and Cal. Civ. Code § 1780(e).

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Date: September 29, 2026

**SHAY LEGAL, APC**

By: *s/ Harrison J. Lynch*
Daniel G. Shay, Esq.
Dan@ShayLegal.com
Harrison J. Lynch, Esq.
Harrison@ShayLegal.com

*Attorneys for Plaintiff and the Proposed Class*

Date: September 29, 2026

**SWIGART LAW GROUP, APC**

By: *s/ Joshua B. Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

*Attorneys for Plaintiff and the Proposed Class*

**CLRA VENUE DECLARATION**

**(CAL. CIV. CODE § 1780(d))**

I, Daniel G. Shay, declare as follows:

1. I am an attorney licensed to practice in California, a member of the bar of this Court, and the principal of Shay Legal, APC, counsel of record for Plaintiff. I have personal knowledge of the facts stated here and could competently testify to them.

2. This action is filed in the proper place for trial under Cal. Civ. Code § 1780(d). Defendant does business in this District, and Plaintiff purchased the Product in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at San Diego, California, on September 29, 2026.

By: *s/ Daniel G. Shay*
Daniel G. Shay, Esq.